IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DATA SPEED TECHNOLOGY LLC, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-616-SLR |
| EMC CORPORATION, | ) ) ) | |
| Defendant. | ) | |
| DATA SPEED TECHNOLOGY LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-624-SLR |
| XEROX CORPORATION, | ) ) ) | |
| Defendant. | ) | |
| DATA SPEED TECHNOLOGY LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-625-SLR |
| ZOHO CORPORATION, | ) ) ) | |
| Defendant. | ) | |
| DATA SPEED TECHNOLOGY LLC, | ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civ. No. 13-1052-SLR |
| TOSHIBA AMERICA INC., | ) ) ) | |
| Defendant. | ) | |

DATA SPEED TECHNOLOGY LLC, )
                         )
        Plaintiff, )
                         )
     v. )   Civ. No. 13-1443-SLR
                         )
ALFRESCO SOFTWARE, LTD. and )
ALFRESCO SOFTWARE, INC., )
                         )
        Defendants. )

DATA SPEED TECHNOLOGY LLC, )
        Plaintiff, )
     v. )   Civ. No. 13-1447-SLR
DASSAULT SYSTEMES
SOLIDWORKS, CORP., )
        Defendant. )

DATA SPEED TECHNOLOGY LLC, )
        Plaintiff, )
     v. )   Civ. No. 13-1450-SLR
THOMSON REUTERS
CORPORATION, THOMSON
REUTERS U.S.A. INC., and
THOMSON REUTERS U.S. LLC, )
        Defendants. )

DATA SPEED TECHNOLOGY LLC, )
        Plaintiff, )
     v. )   Civ. No. 13-1452-SLR
WOLTERS KLUWER U.S.
CORPORATION and CCH, INC., )
        Defendants. )

| | |
|---|---|
| DATA SPEED TECHNOLOGY LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 14-33-SLR |
| EGNYTE, INC., | ) |
| Defendant. | ) |
| DATA SPEED TECHNOLOGY LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 14-34-SLR |
| INTUIT INC., | ) |
| Defendant. | ) |
| DATA SPEED TECHNOLOGY LLC, | ) |
| Plaintiff, | ) |
| v. | ) Civ. No. 14-36-SLR |
| PERFORCE SOFTWARE, INC., | ) |
| Defendant. | ) |

## MEMORANDUM

At Wilmington this 8th day of April, 2014, having reviewed the multiple motions to dismiss for lack of subject matter jurisdiction and the papers filed in connection therewith, and having heard oral argument on the same; the court issues its decision based on the following analysis:

1. **Introduction.** Plaintiff Data Speed Technology LLC ("DST LLC") has brought suit against multiple defendants asserting infringement of U.S. Patent No. 5,867,686 ("the '686 patent"). Rather than answer the complaint, the above captioned

defendants have responded by filing motions to dismiss,[1] based on their contention that DST LLC lacks standing to sue because it has not demonstrated that it owns all rights in the '686 patent.  The court has jurisdiction to resolve the pending motions pursuant to 28 U.S.C. §§ 1331 and 1338.

2.  **Background.**  The '686 patent, entitled "High Speed Real-Time Information Storage System," was filed on November 8, 1993 as Application Ser. No. 08/151,063 ("the Application").  The inventors listed on the '686 patent are Kenneth H. Conner ("Conner"), James G. Hunter ("Hunter"), Gregory P. Spar ("Spar"), and Bruce Anderson ("Anderson").  There is no indication on the face of the '686 patent that it has ever been assigned, let alone assigned to DST LLC.  (D.I. 1, ex. A)[2]

3.  On October 7, 1992, prior to the filing date of the Application, inventor Conner entered into a "Preliminary Agreement" with Peter King ("King"), whereby King agreed to "provide the initial financing and management direction" to assist Conner "in the startup and management of a business entity whose purpose [was] to develop, finance and market product technology developed by Conner and others as they may be called upon to assist in this development."  (Civ. No. 13-624, D.I. 11, ex. B at 4)  The parties agreed that Conner would receive 25% of the common stock of such an entity "without any financing or payment obligations," and that King would receive 75% of the common

---

[1]D.I. 8, Civ. No. 13-616; D.I. 10, Civ. No. 13-624; D.I. 14, Civ. No. 13-625; D.I. 9, Civ. No. 13-1052; D.I. 8, Civ. No. 13-1443; D.I. 16, Civ. No. 13-1447; D.I. 10, Civ. No. 13-1450; D.I. 9, Civ. No. 13-1452; D.I. 5, Civ. No. 14-33; D.I. 9, Civ. No. 14-34; and D.I. 9, Civ. No. 14-36.

[2]This is the proper reference in all of the above-captioned cases for the complaint with a copy of the '686 patent attached.

2

stock, with "[a]ny funds advanced by King" deemed a "loan to the entity which shall be solely obligated for any repayment." (*Id.*) Pursuant to the above agreement, on November 24, 1992, Conner and King caused to be formed a Minnesota corporation called "Data Speed Technology Corporation" ("DST Corp.").

4. In November and December 1992, each of the inventors of the '686 patent assigned "the entire right, title and interest which [the inventors] might have in any and all inventions, and any improvements thereof, which relate to and/or which are based upon the subject matter disclosed to [the inventors] pursuant to the Non-Disclosure Agreement. . . ." (Civ. No. 13-1445, D.I. 17, ex. 1) More specifically: (a) Anderson executed an assignment on October 10, 1992 to Conner and King Companies, Inc. in connection with a non-disclosure agreement between Anderson and The King Companies, Inc., entered "[i]n order to protect the trade secrets and other proprietary rights of The King Companies, Inc. and Kenneth Conner;" (b) Spar executed an assignment on November 30, 1992 to Conner and King in connection with a non-disclosure agreement between Spar and The King Companies, Inc., entered "[i] order to protect the trade secrets and other proprietary rights of The King Companies, Inc. and Kenneth Conner;" and (c) Hunter executed an assignment on December 21, 1992 to Conner and King in connection with a non-disclosure agreement between Hunter and King, entered "[i]n order to protect the trade secrets and other proprietary rights of Peter J. King and Kenneth Conner." (*Id.*) Despite the above, on December 30, 1993 (following the filing of the Application with the Patent & Trademark Office ("PTO") on November 9, 1993), Anderson, Spar and Hunter assigned their rights in the Application

3

to DST Corp.[3]  (Civ. No. 13-1450, D.I. 14, ex. 2)  The assignment was recorded in the Patent & Trademark Office ("PTO") on April 29, 1994.  (Civ. No. 13-1450, D.I. 14, ex. 5)

5.  Prior to filing the Application with the PTO, King (as President of DST Corp., the borrower) entered into a "Security Agreement" on April 1, 1993 whereby DST Corp. borrowed a sum certain from King (the individual lender), with the invention of the Application used as collateral.[4]  (Civ. No. 130615, D.I. 18, ex. 2 at 3 and ex. B)  After the filing of the Application with the PTO, King (as President of DST Corp.) and King (the individual) executed a "Security Assignment of Patents" on March 3, 1994 whereby, "in furtherance of the security interest granted under the [April 1, 1993] Security Agreement," DST Corp. assigned to King "its entire right, title and interest in and under all patent applications[, including the Application.] pending as of the date hereof or at any time hereafter until the Obligations shall have been paid in full."  (Civ. No. 13-615, D.I. 12, ex. 3)  Said agreement was recorded with the PTO on March 16, 1994.

6.  Thereafter, King and DST Corp. challenged Conner's ownership interest in the Application, both in the PTO[5] and in court.[6]  In the PTO challenge, DST Corp.

---

[3]Conner did not execute the assignment form, arguably because he was an owner of DST Corp..

[4]More specifically, "[t]he invention entitled 'HIGH SPEED REAL TIME CROSS SYSTEM INFORMATION STORAGE SYSTEM' consisting of an information storage system which enables multiple users to access a data base at a speed much faster than known information storage systems." (Civ. No. 13-615, D.I. 18, ex. 2 at 3 and ex. B)

[5](Civ. No. 13-624, D.I. 11, ex. B at 5-6)

[6](Civ. No. 13-1445, D.I. 17, ex. 2 at 1)

4

asserted that, "[s]ince the [April 1, 1993 Security] Agreement obligates Conner to provide the technology of the Application exclusively to Data Speed, any rights Mr. Conner had in the Application are now owned by Data Speed." (Civ. No. 13-624, D.I. 11, ex. B at 2)

7. By virtue of a "Partial Release from Security Assignment of Patents," entered into by DST Corp. and King (with King executing same on December 29, 1994), King released DST Corp. from any and all obligations, *inter alia*, to prosecute the Application "and any resulting patents, or any continuation, division, renewal, substitute or reissue thereof." (Civ. No. 13-624, D.I. 11, ex. B at 12) DST Corp. was further granted "an exclusive, assignable, royalty-free and irrevocable license to use" such, as well as the right to bring suit for infringement of such, "[p]rovided, however, that in the event of any default by [DST Corp., its] successors and assigns, under the Security Agreement, [King], his successors and assigns, shall have the right to take, use, sell, assign, transfer or otherwise dispose of the" Application. (*Id.*)

8. On or about December 31, 1994, DST Corp., King and Conner entered into a "Settlement Agreement" whereby: (a) DST Corp. and King agreed to assign to Conner "the sole right and power to prosecute" the Application; (b) King, DST Corp. and "the business entity identified as 'King Companies' will assign to Conner all rights which they may have in certain non-disclosure agreements;" (c) King, DST Corp., Conner, "and the business entity identified as 'King Companies'" agreed that "the assignments executed by Mr. Anderson, Mr. Hunter and Mr. Spar to King Companies jointly with Conner and to King jointly with Conner" were assigned to DST Corp. with an effective date of November 9, 1993, subject to the Security Agreement and Security Assignment of

5

Patents and Partial Release of Security Assignment of Patents and Obligations; and (d) "[u]pon full performance of the Obligations,[7] King shall transfer and assign to Conner all rights, title and interest in the invention assigned to King, as well as the . . . Application." (Civ. No. 13-1450, D.I. 14, ex. 5 at 7-8)

9. On November 8, 1995, Application No. 08/555,259 was filed, which application was a continuation of the Application, now abandoned. The '686 patent issued on February 2, 1999 from Application No. 08/555, 259. (D.I. 1, ex. A) As noted above, there is no indication of assignment on the face of the '686 patent.

10. On March 14, 2011, King died. According to his personal representative, at the time of his death, King owned and held all rights, titles and interest in the Application ("and any continuation applications and any patents issuing therefrom (collectively the 'Patent Rights')" (Civ. No. 13-1450, D.I. 14, ex. 6; D.I. 22, attachments), which Patent Rights passed immediately to the Peter J. King Revocable Trust ("the Trust"). On February, 13, 2013, the trustee of the Trust sold, assigned, transferred and conveyed to Conner the Trust's "entire right, title and interest in and to the Patent Rights, including the '686 patent." (Civ. No. 13-1450, D.I. 14, ex. 7)

12. On February 14, 2013, Conner assigned to Empire IP LLC the '686 patent, which assignment was recorded on April 3, 2013. On April 2, 2013, Empire IP LLC assigned to DST LLC the '686 patent, which assignment also was recorded on April 3, 2013. (*Id.*, ex. 8; D.I. 22, attachments 1 and 2) DST LLC filed the first of the

---

[7]Understood to be $250,000. (Civ. No. 13-1450, D.I. 14, ex. 5 at 8)

6

complaints asserting infringement of the '686 patent on April 12, 2013. (Civ. No. 13-615, D.I. 1)

13. **Standard of Review.** Article III standing to sue for patent infringement "derives solely" from 35 U.S.C. § 281, which provides that "'[a] patentee shall have remedy by civil action for infringement of his patent.'" *Intellectual Prop. Dev., Inc. v. TCI Cablevision of Cal., Inc.*, 248 F.3d 1333, 1346 (Fed. Cir. 2001). The term "patentee" is defined as including "not only the patentee to whom the patent issued, but the successors in title to the patentee." 35 U.S.C. § 100(d). "This has been interpreted to require that a suit for infringement must ordinarily be brought by a party holding legal title to the patent." *Enzo APA & Son, Inc. v. Geapag A.G.*, 134 F.3d 1090, 1093 (Fed. Cir. 1998). Transfers of title, otherwise known as assignments, are controlled by 35 U.S.C. § 261, which provides:

> Applications for patent, patents, or any interest therein, shall be assignable in law by an instrument in writing. The applicant, patentee, or his assigns or legal representatives may in like manner grant and convey an exclusive right under his application for patent, or patents, to the whole or any specified part of the United States.

35 U.S.C. § 261. According to the Supreme Court in *Waterman v. Mackenzie*, 138 U.S. 252 (1891), a case characterized by the Federal Circuit as "the mainstay of Supreme Court patent standing jurisprudence," *Int'l Gamco, Inc. v. Multimedia Games, Inc.*, 504 F.3d 1271, 1279 (Fed. Cir. 2007), the hallmark of standing is that an assignment must exclude "all other persons, even the patentee," 138 U.S. at 256.

14. "A party that has been granted all substantial rights under the patent is considered the owner regardless of how the parties characterize the transaction that

7

conveyed those rights." *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1250 (Fed. Cir. 2000); *see also Vaupel Textilmaschinen KG v. Meccanica Euro Italia S.P.A.*, 944 F.2d 870, 875 (Fed. Cir. 1991). Where there is more than one owner of an interest in the patent, "United States patent law . . . requires that all co-owners normally must join as plaintiffs in an infringement suit." *Int'l Nutrition Co. v. Horphag Research Ltd.*, 257 F.3d 1324, 1331 (Fed. Cir. 2001). In this regard, the court must be mindful of the "risk of multiple suits and multiple liabilities against an alleged infringer for a single act of infringement." *Int'l Gamco, Inc.,* 504 F.3d at 1278.

15. Standing is a "threshold jurisdictional question,"[8] and must exist at the time the suit is brought. *See Sicom Systems v. Agilent Techs.,* 427 F.3d 971, 975-76 (Fed. Cir. 2005). It is a plaintiff's burden to prove standing. *See Steel Co. v. Citizens for a Better* Env't, 523 U.S. at 104.

16. **Analysis.** In the various complaints filed in the above captioned cases, DST LLC addressed standing by the following assertions: "On November 9, 1993, the team[9] filed an application for patent on the invention, and on February 2, 1999, the U.S. Patent and Trademark Office issued" the '686 patent. . . . Data Speed Tech is the owner by assignment" of the '686 patent. (Civ. No. 13-1450, D.I. 1, ¶¶ 1, 9) As the motion practice has revealed, those simple assertions do not even begin to disclose the whole story, as related above.

---

[8]*See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998) ("Standing to sue is part of the common understanding of what it takes to make a justiciable case.").

[9]Although inventors Conner, Hunter, Spar and Anderson are mentioned, the word "team" is not so defined and, therefore, not so limited.

8

17.  In the first instance, as is evident from the court's above citations to the record, the chronology of ownership of the '686 patent was never provided to the court by any one party.  Indeed, DST LLC, whose burden it is to demonstrate standing and who, theoretically, researched its title before filing suit, submitted its most helpful recitation of facts and documents only after (and in response to) oral argument.  (*See* Civ. No. 13-1450, D.I. 24, 25)

18.  It is hardly surprising that DST LLC so inefficiently responded to defendants' challenge to standing when the chain of title to the '686 patent is reviewed.  Long before the Application was filed, ownership was already in a muddle.  On the one hand, inventors Anderson, Hunt and Spar assigned rights in undisclosed inventions (but presumed to include the invention yet to be disclosed in the Application) to, variously, Conner, King and/or The King Companies, Inc..  A year later, although arguably having no more rights to transfer, inventors Anderson, Hunt and Spar nevertheless again assigned their rights in the Application to DST Corp. which, in the meantime, had borrowed money from King using the invention disclosed in the Application for collateral.  By March 1994, DST Corp. had executed an assignment of the Application to King, which assignment was binding until such time, if ever, that DST Corp. fully paid back its loan to King.

19.  Although DST LLC glosses over much of this convoluted history, certainly title was not clear enough to avoid litigation with Conner as early as 1994.  By virtue of the Settlement Agreement entered into between Conner, King, DST Corp. and "the

9

business entity identified as "King Companies"[10] to resolve such litigation, the parties attempted to clarify the ownership of the Application, to wit: (a) Conner was deemed to own all rights in the various non-disclosure agreements executed by inventors Anderson, Hunter and Spar; (b) DST Corp. was deemed to own the assignments executed by inventors Anderson, Hunter and Spar (with an effective date of November 9, 1993); and (c) although King owned the Application by operation of the various security agreements entered into between King and DST Corp., such ownership would pass to Conner if Conner paid back the loan in full.

20. Apparently Conner never paid back the loan, so King's interest in the '686 patent remained intact until the day he died. According to DST LLC's time line, "[f]ollowing King's death, his entire interest in the patent was transferred to a trust" which, in turn, "transferred its interest to" Conner for an undisclosed consideration. (Civ. No. 13, 1450, D.. 14, ex. 9) The last two assignments (from Conner to Empire and from Empire to DST LLC) also were affected "for good and valuable" - but undisclosed - consideration. (*Id.*, D.I. 22, attachments 1 and 2)

22. **Conclusion.** Despite the decades-long history recited above, I conclude that the record sufficiently establishes that DST LLC holds title to the '686 patent. Unlike many of the patents that are enforced in this court, the inventors of the '686 patent were individuals not affiliated with a corporate employer and, therefore, the '686 patent was not automatically assigned to a corporate entity. As a consequence, the efforts of these individuals to monetize their invention through yet another individual

---

[10](Civ. No. 13-1450, D.I. 14, ex. 5 at 7)

10

(King) can be charitably characterized as less than sophisticated. It was not until the Settlement Agreement was signed in 1994 that those initial assignment efforts were formalized and clarified in a satisfactory way, to wit: (1) All rights to the Application were deemed assigned to DST Corp., subject to the Security Agreement and Security Assignment of Patents and Partial Release of Security Assignment of Patents and Obligations; and (2) If Conner satisfied the obligations imposed by the above documents, King would transfer and assign all his rights in the Application to Conner. Upon King's death, his interest instead passed to a trust and ultimately on to DST LLC.

20. I am satisfied that, for purposes of the pending motions to dismiss, DST LLC has provided sufficient evidence of the chain of title. Therefore, the motions are denied. An order shall follow.

United States District Judge